# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
Case No: 15-CR-49 (06) (MJD/FLN)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | PLEA AGREEMENT AND |
| Plaintiff, | ) | SENTENCING STIPULATIONS |
| | ) | |
| v. | ) | |
| | ) | |
| 6.   HANAD MUSTOFE MUSSE, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America and Hanad Mustofe Musse (hereinafter referred to as "the defendant") agree to resolve this case on the terms and conditions that follow.   This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota.   This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

## PLEA AGREEMENT

1.    **Charge**.   The defendant agrees to plead guilty to Count One of the Superseding Indictment, which charges the defendant with conspiracy to provide material support and resources to members of *ISIL (Islamic State of Iraq and the Levant)*, a designated foreign terrorist organization, in violation of Title 18, United States Code, Section 2339B.   The government agrees to not prosecute the defendant for any additional offenses disclosed to the government by the defendant or known by the government as of the date of this agreement.   However, all conduct known by the government can and will be used as relevant conduct under the Federal Sentencing Guidelines and as factors under 18 U.S.C. § 3553(e) at the defendant's sentencing.   Upon sentencing on Count One, the

SCANNED

SEP 1 0 2015

U.S. DISTRICT COURT MPLS

1

government will move to dismiss the remaining charges in the Superseding Indictment as to the defendant.

2.   **Factual Basis and Stipulated Facts**.  It is stipulated that Count One of the Superseding Indictment is true and that the defendant is guilty of that charge.  The defendant agrees that the following facts are accurate and that the government has sufficient evidence to prove the following at trial:

Between on or about March 1, 2014, and June 1, 2014, the defendant became aware of a group of individuals in both the United States and outside the United States (hereinafter, "the co-conspirators") who had traveled or who desired to travel overseas to join *ISIL*, a designated foreign terrorist organization.   Because defendant wished to travel to Syria to join and fight with *ISIL*, he joined this group of aspiring travelers.   Defendant was aware that *ISIL* was a designated foreign terrorist organization that engaged in terrorism and terrorist activity.

Throughout 2014, the defendant participated in several meetings occurring in the District of Minnesota during which he and co-conspirators discussed traveling to Syria to join *ISIL*.   The defendant and his co-conspirators discussed, among other things, means of funding travel to Syria, potential routes of travel from Minnesota to Syria that would best elude law enforcement, and the feasibility of obtaining and using fraudulent travel documents to facilitate travel to Syria.   By June 1, 2014, the defendant had become aware that co-conspirator Abdi Nur had successfully traveled to Syria and joined *ISIL*.   The defendant was also aware that co-conspirator Abdullahi Yusuf had attempted travel to Syria to join *ISIL* but had been stopped by law enforcement at the Minneapolis/St. Paul International Airport.   Throughout 2014, the defendant continued to associate with his

co-conspirators who remained in Minnesota, and he and his co-conspirators maintained contact with Syria-based co-conspirator Abdi Nur.

In October of 2014, the defendant and co-conspirators Zacharia Abdurahman ("Abdurahman"), Hamza Ahmed ("Ahmed"), Mohamed Farah, Adnan Farah, Guled Omar ("Omar"), Abdurahman Daud, ("Daud"), Abdullahi Yusuf, and other unindicted co-conspirators, engaged in meetings and preparations for travel to Syria to join *ISIL*. Beginning on October 20, 2014, and continuing through November 6, 2014, the defendant made a series of five (5) cash withdrawals from his federal financial aid account totaling $2,400. The defendant deposited these funds into a personal checking account that he opened at a Wells Fargo Bank on November 3, 2014.

In furtherance of the conspiracy alleged in Count One of the Superseding Indictment, the defendant and co-conspirators Mohamed Farah, Ahmed and Abdurahman purchased Greyhound bus tickets from Minneapolis to New York City on or about November 6, 2014. The defendant purchased his bus ticket with the financial aid funds in his personal account at Wells Fargo Bank. The defendant then traveled by Greyhound bus to New York City where, as planned, he met co-conspirators Mohamed Farah, Ahmed and Abdurahman at the John F. Kennedy International Airport ("JFK"). While at JFK on November 8, 2014, the defendant purchased a round-trip ticket to Athens, Greece, with the intention of traveling onward to Syria to join *ISIL*. The defendant knew that co-defendant Abdurahman had also purchased a ticket for this same flight to Athens for the same purpose. The defendant further knew that co-defendants Ahmed and Mohamed Farah were also departing JFK together that same day for the purpose of traveling to Syria to join *ISIL*.

3

When the defendant was prevented by federal agents in New York from boarding his flight, he lied to the interviewing agents about the true nature of his travel by maintaining that he intended to vacation in Greece. The defendant also failed to notify agents that it was known to him that co-conspirators Abdurahman, Mohamed Farah and Ahmed also intended to travel to Syria to join *ISIL* after departing the United States via JFK.

Following their attempt to fly overseas on November 8, 2014, the defendant and co-conspirators Mohamed Farah, Abdurahman and Ahmed met, discussed and coordinated, among other things, false responses to anticipated law enforcement inquiries in an effort to conceal their activities. The co-conspirators all agreed to continue to provide false information to conceal their intention to travel to Syria to join *ISIL*.

Throughout the winter and spring of 2015, the defendant participated in a series of meetings with co-conspirators Mohamed Farah, Adnan Farah, Daud, and Abdurahman regarding another attempt to travel to Syria to join *ISIL*. During these meetings, the group again discussed travel routes, means of financing travel and the use of fraudulent travel documents by members of the conspiracy. To that end, the defendant willingly agreed to participate in a scheme to acquire false passports, and to travel from Minnesota to Mexico where he and his co-conspirators planned to fly overseas to join *ISIL* using the false passports.

On April 6, 2015, the defendant provided a passport photograph of himself to a co-conspirator for the purpose of creating a false passport for the defendant. The defendant knew that his co-conspirator would give the photograph to an individual whom the defendant believed had a source in California for producing fake passports.

Unbeknownst to the defendant, this individual was a cooperating human source, or "CHS". When he gave his photograph to his co-conspirator, the defendant fully intended for it be used in the production of a fake passport which he, the defendant, would use to cross into Mexico and travel on to Syria. When the defendant's family learned of his plan to travel, he requested the return of the photograph from the CHS. The defendant admits, however, that he did not withdraw from the conspiracy to provide material support to *ISIL* when he sought the return of his passport photograph, rather, the defendant was attempting to preserve the viability of his and his co-conspirators' future travel to Syria.

3.   **Waiver of Pretrial Motions**.   The defendant has filed pretrial motions and, now withdraws those motions based on the defendant's decision to enter a plea agreement with the United States. The defendant understands that by withdrawing the motions no court will consider or rule on the merits of those motions. The defendant withdraws and waives these motions knowingly, voluntarily and intelligently.

4.   **Statutory Penalties**.   The parties agree that Count One of the Superseding Indictment carries maximum statutory penalties of:

    a.    fifteen (15) years' imprisonment;

    b.    a supervised release term of life;

    c.    a criminal fine of $250,000; and

    d.    a mandatory special assessment of $100, which is payable to the Clerk of Court immediately after sentencing.

5.   **Revocation of Supervised Release**.   The defendant understands that if he were to violate any condition of supervised release, he could be sentenced to an additional term of imprisonment pursuant to 18 U.S.C. § 3583(e).

6.    **Guideline Sentencing Stipulations**.   The defendant understands he will be sentenced in accordance with the Federal Sentencing Act, 18 U.S.C. § 3551, *et seq.*, with reference to the applicable United States Sentencing Guidelines ("U.S.S.G.").   The parties believe that the Guidelines Manual incorporating amendments effective November 1, 2011, applies in this case.   The parties agree that the following calculations regarding the Guidelines will ultimately be determined by the Court.

a.    Base Offense Level.
The parties agree that the applicable guideline section is U.S.S.G. § 2M5.3(a), which provides a base offense level of 26.

b.    Specific Offense Characteristics.
The parties agree that the facts of this case support no specific offense characteristics.

c.    Chapter 3 Adjustments.
The parties agree that the 12-level adjustment described at U.S.S.G. § 3A1.4(a) applies.

d.    Acceptance of Responsibility.   If the defendant (1) provides full, complete and truthful disclosures to the United States Probation Office, including providing complete, accurate and truthful financial information; (2) complies with all conditions of release; (3) testifies truthfully during the change of plea and sentencing hearings; (4) complies with this Agreement; and (5) undertakes no act inconsistent with acceptance of responsibility before the time of sentencing, the government agrees to recommend that the defendant receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and to move for an additional one-level reduction under U.S.S.G. § 3E1.1(b).   Whether there will be a reduction for acceptance of responsibility shall be determined by the Court in its discretion.

e.    Total Offense Level.
With the application of U.S.S.G. § 3A1.4, the adjusted offense level is 38, minus 3 points for acceptance of responsibility, if applicable, for a total offense level of 35.

The Court will make the final determination of the total offense level.

f.  <u>Criminal History Category</u>.
The parties believe that because the U.S.S.G. § 3A1.4 enhancement applies, the defendant has a criminal history category of VI.

g.  <u>Guidelines Range</u>.   The parties agree that if the adjusted offense level is 35, and the defendant's criminal history category is VI, then the Guidelines range is 292-365 months.   However, because 18 U.S.C. § 2339B carries a statutory maximum sentence of 15 years (180 months), the parties agree that the defendant's guidelines range is 180 months' imprisonment.

h.  <u>Fine Range</u>.
The parties agree that if the total offense level is 35, the fine range is $20,000 to $200,000.   U.S.S.G. § 5E1.2. There is no agreement as to the imposition of a fine or, if one is imposed, the amount of any such fine.

i.  <u>Supervised Release</u>.
The parties agree that the Sentencing Guidelines specify that, if a term of supervised release is ordered, the term of supervised release is 2 years to life.   U.S.S.G. §§ 5D1.2(a)(2) and 5D1.2(b)(1).

j.  <u>Departures</u>:
The parties agree that the defense reserves its right to argue grounds for a downward departure or variance from the ultimate guideline determination in this case.

k.  <u>Further Offense Characteristics</u>:
The parties agree that the facts of this case support no other specific offense characteristics or chapter three adjustments.

7.  **Discretion of the Court**.  The foregoing stipulations are binding on the parties, but do not bind the Court.   The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determinations regarding the applicable guideline factors and the applicable criminal history category.   The Court may also depart from the applicable guidelines.   If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may

CASE 0:15-cr-00049-MJD-HB   Doc. 255   Filed 09/09/15   Page 8 of 9

not withdraw from this Agreement and the defendant will be sentenced pursuant to the Court's determinations.

8.     **Special Assessment**.     The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted.   U.S.S.G. § 5E1.3.   In this case, the defendant stands convicted of one count and is required to pay $100.

9.     **Forfeiture**.   The government reserves its right to proceed against any of the defendant's assets if said assets represent real or personal property involved in violations of the laws of the United States or are proceeds traceable to such property.

10.     **Immigration Consequences**.     The defendant recognizes that pleading guilty may have consequences with respect to his immigration status, including removal or deportation, if he is not a citizen of the United States.   The defendant understands that no one, including his attorney, the Assistant U.S. Attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.   Regardless of any immigration consequences that may follow from his guilty plea, including the possibility of mandatory removal or deportation from the United States, the defendant still wishes to plead guilty as set forth in this agreement.

11.   **Complete Agreement**.   The foregoing sets forth the full extent of the Plea

Agreement and Sentencing Stipulations in the above-captioned case.


Dated: September _9_, 2015

                        ANDREW M. LUGER
                        United States Attorney

                        BY: ANDREW R. WINTER
                        Assistant U.S. Attorney

                        BY: JOHN DOCHERTY
                        Assistant U.S. Attorney

Dated: September _9_, 2015

                        HANAD MUSTOFE MUSSE
                        Defendant

Dated: September _9_, 2015

                        ANDREW BIRRELL, Esq.
                        Attorney for Defendant

Dated: September ___, 2015

                        PAUL DWORAK, Esq.
                        Attorney for Defendant